## Boyer's Estate. Hughes's Appeal. Buchanan's Appeal.

1. The rule, which in the entry of judgments and like liens rejects fractions of a day, is firmly established, and is not to yield unless to the certain demands of justice.

2. On this principle, the lien of a judgment begins with the day, and ante-dates a conveyance; and in this respect there is no distinction between judgments by confession and those actually pronounced by the courts.

3. A debtor executed and delivered an assignment for the benefit of creditors, and the hour of the delivery was established by proof; two judgments by confession were entered against him on the same day, but the time of their entry was not ascertained. *Held*, that the judgment had precedence of the assignment.

APPEAL from the Court of Common Pleas of *Chester county*, in the matter of the assigned estate of Andrew Boyer. Eliza Hughes, administratrix, &c., of Eneas Hughes and William Buchanan, judgment-creditors of Boyer, were appellants, and Benjamin Jones and others, general creditors of Boyer, were appellees.

Boyer was the owner of two tracts of land in Chester county.

On the 15th of February 1862 judgments were entered against Boyer in favour of Buchanan and Hughes respectively, on bonds and warrants of attorney; the first dated March 5th 1861, conditioned to pay $2400, and the other dated April 1st 1861, conditioned to pay $1600. The hour at which they were entered did not appear.

On the evening of February 14th 1862, Boyer executed a deed of assignment for the benefit of his creditors, and on the next day, February 15th, between ten o'clock A. M. and one o'clock P. M., in company with the assignee, placed the deed in the recorder's office for record, Boyer having, until that time, kept it in his possession and control. The auditor found that this was the time of its delivery.

The question in the case arose on the distribution of the balance in the hands of the assignee, and was whether the above-named judgment-creditors should be first paid, or whether the funds should be distributed amongst all the creditors *pro rata*.

The auditor, R. E. Monaghan, Esq., after finding the facts, further reported:—

[Boyer's Estate.]

" Having thus fixed the date of the delivery of the deed, it becomes important to determine the effect of entering the Buchanan and Hughes judgments, on the same day with the deed. The evidence does not show what hour of the day these judgments were entered, but the counsel argued that they became liens on the land of the grantor from the first hour of the day. Our Supreme Court has decided that the rule of the common law, which rejects fractions of a day in determining the priority of liens, is restricted to judgments, and in a case similar to this the court say it would be impossible to put a judgment and a conveyance on a footing of equality, not only because it would be impracticable to determine the relative proportions coming to each, but because they are inconsistent and irreconcilable. " The one," says Gibson, C. J., " is a security which encumbers the property in exclusion of everything subsequent to it; the other, a conveyance excluding everything to which it is anterior; and they are, therefore, incapable of standing together. To affect land in the hands of a purchaser a judgment must have been not merely simultaneous with, but anterior to the conveyance; and, as an indispensable measure of justice, the precise time at which the judgment was entered must be shown by less than record proof." " The argument," says the learned judge, " that a judgment whose date, in contemplation of law, covers the whole day, is necessarily anterior to a conveyance at an intermediate point of the same day, is too subtle to be solid ;" and in concluding his argument the chief justice says, " When judgments bear the same date they must necessarily come in together, but between a judgment and a conveyance, actual priority must be shown like any other fact :" Mechanics' Bank v. Gorman, 8 W. & S. 304.

" In the more recent case of Claason's Appeal, found in 10 Harris 359, the judge delivering the opinion of the court refers to the case of Mechanics' Bank v. Gorman as the rule, and reiterates the doctrine that, in a contest between a judgment and a conveyance, fractions of a day are admitted, and that the first in order shall be first in right.

" The two judgments before the auditor are claimed to be superior to the other creditors of Andrew Boyer, because they are preferred by reason of being liens on his lands, and are liens on his lands because of their priority to the delivery of the deed of assignment. But this priority must not be presumed; its actuality must be shown like any other fact; it must be shown by those who make the claim, not by those who contest it. The precise time at which the judgments were entered must be shown, by less than record proof, to have been anterior to the conveyance. This has not been shown. The auditor is therefore of opinion that in law these judgments are not entitled to be pre-

1 P. F. Smith—28

ferred in the distribution, but must participate as equals with the other creditors.

" In equity their claim is no better. By the deed of assignment the assignor declares his intention to make ' a just distribution' of his estate and effects ' among his creditors,' '*pro rata*, according to the amount of their respective demands, without preference as between individuals.' This was his declaration on the day before the deed was delivered or the bonds were entered. Equity is equality ; and a learned judge has well said that the fundamental principle of equity abhors inequality."

Upon exceptions, the Court of Common Pleas, Butler, P. J., confirmed the auditor's report, delivering the following opinion :—

" Were the judgments against Boyer liens on the land ?

" The conveyance of the land and the entry of the judgment took place on the same day. The deed was executed the day before, but was not delivered until the next day.

" When two judgments are entered on the same day, neither has priority over the other ; both are regarded as taking effect from the first moment of the day ; where a judgment and mortgage are entered on the same day, no inquiry, it would seem, will be made in regard to the time of entry, but the two liens will take together. Where, however, a judgment is entered, and a *conveyance* made by the obligor on the same day, the rule is otherwise.

" They cannot share the property ; the one must take to the exclusion of the other ; and it becomes necessary, therefore, to inquire into the hour when the entry was made; and the conveyance took place.

" If it simply appears that both transactions took place on the same day, without anything to indicate the hour, no presumption arises in favour of either; they stand upon an equality in this respect.

" The burden of proof is not more upon the one than upon the other, and an investigation must take place. But if the holder of the conveyance prove the particular time at which it was delivered, I think he casts upon the holder of the judgment the burden of proving the hour at which his lien was entered. To require more than this of the claimant under the deed would seem to be unreasonable. He knows the time at which the conveyance was made, and should show it, but in regard to the time of entering the judgment he knows nothing. The holder of the judgment does know this time, and although he possibly may not be able to prove it, he is more likely to be able to do so than the holder of the conveyance.

" In the case before us it is shown, that the conveyance was made between the hours of ten and one o'clock, in the middle of the day. So far as appears no effort was made to show the hour

at which the judgments were entered. No presumption whatever exists in their favour, and I think what was shown by the claimants under the conveyance was sufficient to cast the burden of proof upon them. The hour at which the conveyance was made having been exhibited, it became necessary that the judgment creditors should show priority.

"They are endeavouring to carry out a scheme by which it was intended to give them a preference over other creditors. The assignment was in contemplation, and the conveyance prepared some days before the judgments were entered. It is not unlikely that the delivery of the conveyance and entry of the judgments took place virtually at the same time. No such preference can be created by the deed of assignment. The Act of Assembly forbids it. And although it is held that a judgment entered prior to the assignment, in contemplation of that act, and with a view to preferring the creditor, is good as a lien, no presumption should, I think, be made in favour of such a judgment, but the creditor setting it up should be required to show very distinctly that it was a lien upon the land at the time of the assignment."

The decree of the court confirming the auditor's report was assigned for error.

*J. S. Futhey* and *G. M. Rupert* (for Hughes), and *John J. Pinkerton* (for Buchanan), for appellants.—The judgments, in absence of evidence that they were entered after the delivery of the assignment, became liens on the real estate. There is no judicial division of a day, and the law will not inquire into the order of the entry of judgments entered the same day. Between a judgment and a conveyance there can be no *pro rata* distribution, and evidence as to priority will be allowable : Mechanics' Bank *v.* Gorman, 8 W. & S. 304 ; Maynard *v.* Esher, 5 Harris 222 ; Long's Appeal, 11 Id. 301 ; Small's Appeal, 12 Id. 400 ; Claason's Appeal, 10 Id. 363.

The judgment is the act of the court, which looks to no fractions of a day. The delivery of a deed is a matter *in pais*. In the absence of proof as to either, the judgment must have priority. If they both stood on an equality, the burthen is not more on one than on the other. Which must move ? If the burthen is on the grantee, he must *prove* his deed prior to the judgment. Showing the hour proves nothing, but that the deed was then delivered ; it does not move a step to prove which was first. Those who claim under the deeds must show that there were no liens on the land when they were delivered : Lanning *v.* Pawson, 2 Wright 486.

The grantee can protect himself by having searches. There are no cases to sustain the decree. The general creditors are not purchasers for value ; they have not paid their money for what

[Boyer's Estate.]

they supposed clear of encumbrances. The rule allowing investigation as to priority applies to contests between alleged liens and purchasers for value: Small's Appeal, 12 Harris 398. The same equity which would divide the day in this case would do so between judgments entered the same day.

*John H. Brinton*, for appellees.—In Mechanics' Bank *v.* Gorman the facts were agreed on that the deed was delivered before the entry of the judgment. Here the proof fixes the hour of the delivery of the deed, and the legal fiction that a judgment relates to the first moment of the day, is the ground urged that the judgment had priority. Mechanics' Bank *v.* Gorman abolished the fiction and remitted the parties to proof of hours. Where there is no proof of hours, reviving this fiction would overturn that decision, and would place judgment-creditors beyond the attack of the vendee. Lien-owners are more cognisant of their own acts than the vendee; let them keep the evidence of the time of entry.

The fiction originated for the purpose of producing equality: Metzler *v.* Kilgore, 3 Penna. Rep. 245; Long's Appeal, 11 Harris 299. Here the proceeds of the real estate will not pay the judgments, and they will come in with the other creditors on the personal property. The facts *in pais* must be shown by the party alleging them. Long's Appeal was a contest between foreign attachments. Lanning *v.* Pawson was as to proving fractions of a day in the entry of a judgment after the defendant's death. Mechanics' Bank *v.* Gorman shows that the distinction between assignments for benefit of creditors and deeds for value is not well taken: citing also Hall *v.* Benner, 1 Penna. Rep. 402; Morrison *v.* Wentz, 7 Watts 437.

The appellees contended that the deed took effect from its execution, February 14th: Blight *v.* Schenk, 10 Barr 290; Garnons *v.* Wright, 5 B. & C. 671; Lloyd *v.* Bennett, 8 C. & P. 124.

The opinion of the court was delivered, January 23d 1866, by

Agnew, J.—The question upon this record is, whether a judgment or a deed of assignment for the benefit of creditors shall take preference in the distribution of a fund arising from real estate. The conceded facts are, that on the same day the judgment was entered the deed was delivered between the hours of ten and one o'clock; but there is no evidence as to the time of the entry of the judgment—it might have been before or after the delivery of the deed.

There is no case to be found in the books precisely like it, yet doubtless there are familiar principles contained in many decisions, which rule this case. Were it a question between lien-creditors only it might be readily solved, by letting them share

[Boyer's Estate.]

in the fund *pro rata*, on the ground that a day has no fractions in legal proceedings. But here the claims of the parties conflict not only in time but nature, and are so irreconcilable one must give way to the other ; and the question is, what principle must govern the precedence ? A lien is but a encumbrance on title, but a conveyance passes the title away. If, therefore, the judgment be prior, the conveyance is subject to it; if posterior it has no lien, because the title is gone. In principle the case falls clearly within the decision in Mechanics' Bank *v.* Gorman, 8 W. & S. 304, Claason's Appeal, 10 Harris 363, and like cases, admitting proof of the hour at which each transaction took place. But no proof was excluded, and the difficulty arises not from a denial of the right to give it, but from the inability to furnish it. We are then driven to the necessity of determining the rights of the parties upon the presumption which the law must afford us. In point of fact the judgment may have been prior, it would therefore be unjust to postpone it from mere considerations of equality in the distribution. It may have been subsequent, and it would be improper to give it undue precedence. It must, therefore, be determined upon just legal principles, and those reasons which best promote the general interests.

The rule that, in the entry of judgments and liens of like character, rejects fractions of the day, is not a legal fiction, but a measure of policy to prevent litigation, and serve as a guide to the public. It is firmly established, and is not to yield, unless to the certain demands of justice. Starting with this principle the lien of the judgment, which begins with the day itself, necessarily antedates the conveyance. In this respect there is no distinction between judgments by confession, and those actually pronounced by the courts. It is easily to be seen, that in the case of adversary judgments they might be often defeated by the fraud of defendants, who on the same day could place assignments for creditors on record, unless the legal presumption be maintained. Indeed, at common law the judgment related back to the first day. of the term, and it required the passage of the Act of 1772 to confine its operation to the day on which it was signed, in favour of *bonâ fide* purchasers for a valuable consideration.

Besides these motives of public policy, reasons are to be derived from the comparative ability each party has to protect himself. The judgment-creditor it is manifest has no power to protect himself against the conveyance, which has thirty days for its transit to the public record. When he enters his judgment he may inquire for conveyances, but is answered there are none in the office, and yet one may have existed hours beforehand.

He may ask the officer to note the hour of entering his judgment, but this is no protection and only insures his defeat when the earlier deed appears ; and added to this no legal duty rests on

[Boyer's Estate.]

the officer who, under the law, is obliged to enter the day only. But it is different with the grantee in the conveyance; he can be certain of all liens which stand before him. They are on the record, and the officer is bound to inform him, and if necessary to certify the fact under his official responsibility. He can protect himself, therefore, by other means, or, if it be a purchase, decline the title and withhold his money.

The grantor in a voluntary assignment stands in the same position, and if he finds judgments unexpectedly entered against him, may resort to other means to protect his creditors if within his power.

In all these inquiries truth is the object sought for, but having no means of determining the facts, we must adopt that legal inference which best promotes the public interest, protects the rights of individuals, and preserves the community from schemes of fraud and useless litigation. In this case, having no means of ascertaining the actual priority of either judgment or deed, we must allow the legal rule to operate, which, rejecting fractions of the day, carries back the judgment and postpones the assignment.

The decree of the court below is therefore reversed, and the record ordered to be remitted to the court below, with instructions to allow the judgments of the appellants to be first paid out of the fund, and the balance to be distributed in the manner heretofore decreed by the court below, or if the fund should be insufficient to pay the judgments of the appellants in full, then to be paid *pro rata*; and it is ordered that the costs be paid out of the fund in the first place.

STRONG, J., dissented.